IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

KENYADA DUKES,                   *
                                 *
        Plaintiff,               *     CIVIL ACTION NO. 15-00225-B
                                 *
vs.                              *
                                 *
CAROLYN W. COLVIN,               *
Commissioner of Social           *
Security,                        *
                                 *
        Defendant.               *

## ORDER

Plaintiff Kenyada Dukes (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income and child insurance benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*.  On June 8, 2016, the parties consented to have the undersigned conduct any and all proceedings in this case.  (Doc. 20).  Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED.**

## I.   Procedural History

Plaintiff filed an application for supplemental security

income benefits on June 12, 2001, when he was fourteen years old. (Tr. 382). The claim was approved on March 4, 2003 on the basis of major depression, learning disorder, and attention deficit disorder. (Id. at 111, 118). On December 16, 2008, the Agency determined that Plaintiff's disability had ceased on December 1, 2008. (Id. at 174). Following Plaintiff's request for reconsideration, a hearing was conducted on July 28, 2010 before Administrative Law Judge Ricky South. (Id. at 80). Plaintiff (who was twenty-three years old at the time) attended the hearing with his counsel and provided testimony related to his claims. (Id. at 83). Also testifying at the hearing were Plaintiff's mother, a vocational expert ("VE"), and a medical expert ("ME"). (Id. at 90, 95, 100). On September 20, 2010, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. (Id. at 148).

The Appeals Council granted Plaintiff's request for review and remanded the case back to the ALJ on December 12, 2011, with instructions to further evaluate the opinion evidence, as well as Plaintiff's mental and physical impairments and the effect of any limitations on the occupational base. (Id. at 157-59). A subsequent hearing was conducted on May 1, 2013, before Administrative Law Judge Ricky South (hereinafter "ALJ"). (Id. at 44). Plaintiff attended the hearing with his counsel and provided testimony related to his claims. (Id. at 48). A

vocational expert ("VE") also appeared at the hearing and provided testimony. (Id. at 72).

On June 6, 2013, Plaintiff protectively filed an application for child insurance benefits, alleging that he has been disabled since March 15, 2009, due to right hand pain, right hand tingling and numbness to elbow, poor right hand grip and stiffness in dominant right hand, possible nerve damage to right hand, major depression, mood disorder, ADHD, learning disability, high blood pressure, and glaucoma in both eyes.[1] (Id. at 644, 648, 659). Plaintiff's application for child insurance benefits was escalated to the hearing level with his remanded claim for supplemental security income benefits. (Id. at 644; Supp. Tr. 1011). On September 3, 2013, the ALJ issued two separate unfavorable decisions finding that Plaintiff is not disabled and denying both of Plaintiff's claims for benefits.[2] (Id. at 8-27; Supp. Tr. 1003). The Appeals Council denied review on March 4, 2015. (Id. at 1). Therefore, the ALJ's decisions dated September 3, 2013 became the final decisions of

---

[1] Plaintiff has raised no issue on appeal regarding the ALJ's findings related to any of his physical impairments. (Doc. 16). Therefore, the Court's discussion is limited to Plaintiff's mental impairments.

[2] As discussed, Plaintiff's applications for benefits were decided together. The ALJ wrote separate opinions for each claim, but applied the same evidence to both decisions and reached the same result. (Tr. 27; Supp. Tr. 1003).

the Commissioner.

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The parties waived oral argument on June 8, 2016 (Doc. 19), and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.   Issue on Appeal

> 1.   **Whether the ALJ erred in rejecting the opinions of Plaintiff's treating psychiatrist, Dr. David W. Hodo, M.D., while crediting the opinions of the non-examining medical expert, Dr. Doug McKeown, Ph.D.?**

## III. Factual Background

Plaintiff was born on May 1, 1987, and was twenty-six years of age at the time of his second administrative hearing on May 1, 2013. (Tr. 44, 49). Plaintiff was incarcerated at the time of the second hearing; thus, he testified via telephone. (Id. at 46, 52).

Plaintiff testified that he graduated from high school and took some special education classes while there. He also testified that he attended college, but quit after a couple of months because he had problems. (Id. at 61). Plaintiff worked from 2004 to 2009 at the YMCA and at a laundry service, but none of his work constituted substantial gainful activity. (Id. at 48, 410-11). Plaintiff also testified that he has difficulty

4

reading, but he can write and do simple math.  (Id. at 61-62).

Plaintiff testified that his "number one problem" is depression, for which he is being treated by Dr. David Hodo, M.D., a psychiatrist.  (Id. at 50).  Dr. Hodo first saw Plaintiff in 1994 (when Plaintiff was six years old), and he has treated Plaintiff off and on for years.  (Id. at 70-71, 747, 750).  According to Plaintiff, his depression causes him to sleep excessively and to have mood swings.  (Id. at 50).  He takes medication for depression (Buspirone), and it makes him drowsy.  (Id. at 56, 641-42).

Plaintiff testified that he is single and has two children, ages one and nine months.  (Id. at 52).  Prior to his incarceration, Plaintiff lived with his mother and brother.[3] (Id. at 53).  He testified that he sometimes sleeps late but other times gets up around 9:00 a.m., watches television, plays with his eight-year-old brother when he gets in from school, eats dinner, watches television, and then goes to bed.  (Id. at 59-61).  Plaintiff testified that he "sleep[s] all right" after taking his medicine.  (Id. at 61).  Plaintiff also testified that he can take care of his own personal care needs, including dressing himself and showering.  (Id. at 58).  He does not cook

---

[3] At the time of Plaintiff's first hearing on July 28, 2010, he testified that he lived by himself in his own apartment.  (Tr. 85).

or vacuum or mow the lawn, but he makes his own bed, straightens the house, and takes out the trash.  (Id. at 58-59).  He can use a cell phone and understands how to text but has problems with spelling.  (Id. at 58).  He plays games on the computer.  (Id.).  He has a driver's license and shops.  (Id. at 54).  He gets along okay with people, although he is sometimes forgetful and is easily distracted.  (Id. at 68).

In his Function Report submitted to the Agency in October 2008, Plaintiff stated that he can take care of all of his own personal needs, that he can prepare his own meals, that he can do laundry, that he can count change, and that he can use a checkbook/money orders.  (Id. at 575-77).  He also reported that he socializes with family and goes to church and has no problems getting along with others.  (Id. at 578-79).  He stated that he finishes what he starts "some time[s,]" but does not follow instructions well and does not get along with authority figures well, although he has never been fired from a job because of problems getting along with other people.  (Id. at 579-80).  He does not need reminders to take care of his personal needs, but he needs reminders to take his medications.  (Id. at 576).

## IV.  **Analysis**

### A.    **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to

6

determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[4]   Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).   A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.   Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).   The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.   Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").   In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.   Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

**B.   Discussion**

An individual who applies for Social Security disability benefits must prove his or her disability.   20 C.F.R. §§

---

[4] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

404.1512, 416.912.   Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a).   The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[5] 20 C.F.R.

---

[5] The claimant must first prove that he or she has not engaged in substantial gainful activity.   The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments.   If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.   If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work.   Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).   In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.   Id.   Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.   Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985).   If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.   Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).   See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

§§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity and that he has the severe impairments of attention deficit disorder/attention deficit hyperactivity disorder; affective disorder; right hand pain; status post fracture; and low blood pressure of unknown etiology.  (Tr. 14, 48, 74).  The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id. at 14).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform a range of light work, with the following non-exertional limitations: Plaintiff "is limited to no more than simple, short instructions and simple work-related decisions with few work place changes. He is limited to unskilled work.  The claimant can occasionally interact with the general public, supervisors and co-workers. He is unable to work in close proximity to others and is easily distracted.  He is limited to low stress jobs.  The job must have no requirement to read instructions, write reports or perform math calculations." [6]   (Id. at 16).   The ALJ also

---

[6] The ALJ also assigned certain exertional limitations that are not at issue here.  (Tr. 15-16).

determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not credible for the reasons explained in the decision. (<u>Id.</u> at 23).

The ALJ found that Plaintiff does not have any past relevant work. (<u>Id.</u> at 25). However, utilizing the testimony of a VE, the ALJ concluded that considering Plaintiff's residual functional capacity for a range of light work with the stated restrictions, as well as his age, education and work experience, there are jobs existing in the national economy that Plaintiff is able to perform, such as "machine tender," "wire worker," and "assembler," all of which are classified as light and unskilled. (<u>Id.</u> at 26). Thus, the ALJ concluded that Plaintiff's disability ended on December 1, 2008, and Plaintiff has not become disabled again since that date. (<u>Id.</u>).

The Court now considers the foregoing in light of the record in this case and the issues on appeal.

    **1.**   <u>**Issue**</u>

    **A. Whether the ALJ erred in rejecting the opinions of Plaintiff's treating psychiatrist, Dr. David W. Hodo, M.D., while crediting the opinions of the non-examining medical expert, Dr. Doug McKeown, Ph.D.?**

In this case, Plaintiff argues that the ALJ erred in

rejecting the opinions of his treating psychiatrist, Dr. David
W. Hodo, M.D., while at the same time crediting the opinions of
non-examining medical expert, Dr. Doug McKeown, Ph.D., who
testified at Plaintiff's hearing. (Doc. 16 at 5). The
Commissioner counters that the ALJ had good cause to discredit
Dr. Hodo's opinions because they were conclusory and
inconsistent with the substantial evidence in the case and that
that the substantial evidence supports the ALJ's finding of no
disability. (Doc. 17). Having carefully reviewed the record in
this case, the Court finds that Plaintiff's claim is without
merit.

As part of the disability determination process, the ALJ is
tasked with weighing the opinions and findings of treating,
examining, and non-examining physicians. In reaching a
decision, the ALJ must specify the weight given to different
medical opinions and the reasons for doing so. See Winschel v.
Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011).
The failure to do so is reversible error. See Williams v.
Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1
(M.D. Fla. 2009).

When weighing the opinion of a treating physician, the
ALJ must give the opinions "substantial weight," unless good
cause exists for not doing so. Costigan v. Commissioner, Soc.
Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4

(11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)).  The opinion of "a one-time examining physician — or psychologist," on the other hand, is not entitled to the same deference as a treating physician.  Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160).  An ALJ is also "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'"  Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)).  "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources."  Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or unsupported by the evidence of record.  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004).  "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported

by objective medical evidence." <u>Hogan v. Astrue</u>, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." <u>Sryock v. Heckler</u>, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); <u>Adamo v. Commissioner of Soc. Sec.</u>, 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

The record in this case shows that Plaintiff began seeing a psychiatrist, Dr. David Hodo, M.D., in 1994 when he was six years old for problems with isolation and refusing to communicate. (Tr. 747, 750). Dr. Hodo related Plaintiff's problems to "family turmoil" and possible ADHD. (<u>Id.</u> at 732, 748). Over the next few years, Plaintiff's appointments with Dr. Hodo were sporadic. (<u>Id.</u> at 696-97, 731). In April 1996, Dr. Hodo conducted tests which showed that Plaintiff's I.Q. was "normal," and Dr. Hodo again noted that Plaintiff's problems were "emotional,"[7] not the result of a learning disability. (<u>Id.</u>

---

[7] In March 1995 and May 1996, Dr. Hodo referenced family problems, noting family turmoil and problems between Plaintiff and one of his brothers. (Tr. 724, 732). In 1998, Dr. Hodo's notations continue to reference problems between Plaintiff and his brother, noting that the brother was in boot camp and on probation and that Plaintiff was not to be left alone with him. (<u>Id.</u> at 706-07). In March 1999, Dr. Hodo noted that Plaintiff missed his father and wanted his parents to get back together. (<u>Id.</u> at 700-02).

at 725-26).   Dr. Hodo's treatment notes reflect a possible diagnosis of adjustment disorder with depression and anxiety vs. major depression and anxiety disorder, NOS.   (Id. at 726).

From 1996 through 2000, Dr. Hodo prescribed medications for Plaintiff (including Ritalin, Zoloft, and Wellbutrin) and consistently noted that Plaintiff was doing better/doing fine, "more alert," improved concentration, cooperative, smiling, "brighter," better school work, improved attention span, excellent grades (straight A's and A/B honor roll), excellent mood, happy, excellent appetite, no behavioral problems, and that his medications were helping with "no side effects."   (Id. at 697, 700-02, 709, 711-17, 722).

From 2001 to 2002, Dr. Hodo's notes reflect that Plaintiff was experiencing problems at home and at school.   (Id. at 685, 687, 692-93, 696-97, 765).   Dr. Hodo continued to prescribe Wellbutrin and Ritalin, which he noted was helping and was well tolerated, as evidenced by Plaintiff's reports in December 2001 and January 2002 that he was better and experiencing little or no depression.[8]   (Id. at 684, 766-67).   The following month, on February 20, 2002, Dr. Hodo completed a Medical Source Statement (Mental) ("MSS") opining that Plaintiff had marked or extreme

---

[8] Plaintiff filed his first application for disability benefits during this time, on June 12, 2001, when he was fourteen years old.   (Tr. 382).

limitations in every functional category except caring for himself and health/physical well being. (Id. at 768).

On December 6, 2001, at age fourteen, Plaintiff was examined by Dr. Lee Stutts, Ph.D., at the request of the Agency. (Id. at 752). Dr. Stutts conducted a mental status examination, and his findings were largely normal, with the exception of poor eye contact, poor rapport, and slow cognitive processing. (Id.). Dr. Stutts referenced school testing which showed a Full Scale IQ score of 99. (Id.). Dr. Stutts also noted that Plaintiff was taking Wellbutrin and Ritalin. (Id.). Dr. Stutts diagnosed depressive disorder, NOS; rule out social anxiety disorder; rule out dysthymic disorder; rule out learning disability and opined that Plaintiff would benefit from psychotherapy, a more stringent behavior approach to move him away from his dysfunctional behavior patterns, and further educational testing to rule out a learning disorder. (Id. at 753).

The following year, on October 1, 2002, at age fifteen, Plaintiff was examined at the request of the Agency by Dr. Donald W. Blanton, Ph.D. (Id. at 770). Plaintiff's mental status examination revealed that his thoughts and conversation were normal, but he was sad, had very little eye contact, and limited insight and judgment. (Id. at 771-72). In addition, testing resulted in a Full Scale IQ score of 57 (indicating mild

mental retardation); however, Dr. Blanton indicated that depression may have influenced the score. (Id.). Dr. Blanton noted that Plaintiff was taking Wellbutrin, Paxil, and Ritalin. (Id. at 771). Dr. Blanton diagnosed Plaintiff with Major Depression without psychotic features and Mild Mental Retardation. (Id. at 773). He also completed a MSS finding "marked" limitations in Plaintiff's ability to respond appropriately to other students, use judgment in detailed or complex decisions, understand, remember, and carry out detailed or complex instructions, maintain concentration, persistence, or pace for two hours, maintain social functioning, and maintain activities of daily living. (Id. at 774-75). Five months later, on March 4, 2003, Plaintiff's application for supplemental security income benefits was approved on the basis of major depression, learning disorder, and attention deficit disorder. (Tr. 111, 118, 382).

Plaintiff did not see Dr. Hodo for several years after he began receiving social security benefits. He returned to Dr. Hodo in 2005 at age eighteen and from 2005 to 2008, Dr. Hodo saw Plaintiff occasionally in his office but prescribed no medication or other treatment during this time. (Id. at 879, 884, 887, 899, 905-06). Dr. Hodo's treatment notes reflect that Plaintiff was having good junior and senior years in high school and was doing well; however, after graduation, Plaintiff began

to have problems with the police.  (Id. at 879, 882-85, 890-94, 902, 904).   Dr. Hodo recommended that Plaintiff enroll in vocational rehabilitation and noted that Plaintiff was interested in computers.  (Id. at 879-80).  Dr. Hodo's treatment notes from October 2007 to August 2008 reflect that Plaintiff had enrolled in junior college to learn brick masonry; he was looking for a job; and he had criminal court proceedings pending.  (Id. at 882-83, 885).

On November 17, 2008, at twenty-one years of age, Plaintiff was examined at the request of the Agency by psychologist, Dr. Richard S. Reynolds, Ph.D.  (Id. at 855-57).  Plaintiff's mental status examination was completely normal, and Dr. Reynolds noted that Plaintiff was on no medication.  (Id. at 855-56).  Dr. Reynolds administered an IQ test, resulting in a Full Scale IQ score of 74.  (Id. at 857).  Dr. Reynolds diagnosed Plaintiff with no condition other than Borderline Intellectual Functioning and opined that Plaintiff's ability to understand, carry out, and remember instructions and to respond appropriately to supervision, coworkers, and work pressures was intact for his level of intellectual functioning.  (Id. at 855, 857).   Dr. Reynolds further opined that Plaintiff would not need assistance with any benefits awarded.  On December 16, 2008, the Agency determined that Plaintiff's disability had ceased effective

December 1, 2008.[9] (Id. at 174).

Plaintiff continued to see Dr. Hodo from May 2009 to May 2010. During said period, Dr. Hodo did not prescribe Plaintiff any medication.  Dr. Hodo's notes reflect that Plaintiff was still pursuing brick masonry and was doing "all right" and "pretty good" (id. at 929-930); that he was staying out late at night, and his mother was trying to get him in a better environment (Id. at 928-30). His notes also reflect that Plaintiff was distressed and upset because the police were looking for his brother and had questioned him as well.  (Id. at 927).  On June 29, 2010, (when Plaintiff was twenty-three years old), Dr. Hodo completed a MSS form opining that Plaintiff had marked and extreme limitations in every functional category. (Id. at 925-26).  Dr. Hodo acknowledged that he had not obtained a psychological evaluation and that Plaintiff was being prescribed no medication.  (Id. at 926).

At Plaintiff's administrative hearing conducted on July 28, 2010, medical expert and psychologist, Dr. Doug McKeown, Ph.D., testified that Plaintiff has had several IQ tests and that one was in the borderline range, but the majority were in the average range.  (Id. at 91).  In addition, the record showed that Plaintiff passed his high school exit exams, and had

---

[9] Plaintiff's request for reconsideration of that decision and his subsequent application for child's insurance benefits are the subject of the current appeal.

graduated from high school.   (Id.).

With respect to Plaintiff's depression, Dr. McKeown testified that, although Plaintiff had seen Dr. Hodo for many years, Dr. Hodo saw no need for intervention (not even medication) to treat Plaintiff's problems.[10]  (Id. at 92).  Dr. McKeown further testified that, other than visits with Dr. Hodo, there is no significant treatment and no basis for Dr. Hodo's MSS forms opining marked and extreme limitations in every category.  (Id.).  Dr. McKeown opined that the medical evidence shows no more than "mild to moderate" impairments in any category, with possible "moderate" impairments for complex tasks, but no impairment for simple tasks.  (Id. at 93).

During the next two years, Plaintiff continued seeing Dr. Hodo, and Dr. Hodo continued to recommend no medication or any other treatment.  Dr. Hodo's treatment notes from April 2011 to May 2012 reflect that Plaintiff was doing "all right," that he was living alone, that he had applications for jobs, that he was not staying out late as much, that he was helping care for his seven-month-old daughter while her mother worked, that he had a court date but did not feel that he was going to be incarcerated, that he was "doing well," and that he was not

---

[10] Plaintiff's attorney acknowledged at the first hearing that Plaintiff was taking no medication prescribed by Dr. Hodo.  (Tr. 91).

depressed.   (Id. at 945-48).   On May 31, 2012 (when Plaintiff was twenty-five years old), Dr. Hodo completed another MSS again opining that Plaintiff had marked and extreme limitations in every functional category.   (Id. at 943).   Dr. Hodo again acknowledged that he did not obtain a psychological evaluation and that Plaintiff was on no medication.   (Id. at 944).

In June 2012, Dr. Hodo's treatment notes reflect that Plaintiff was still having legal problems involving drugs and charges for first degree robbery; that he had a ten-month old daughter and another baby on the way; that he was looking for his own house or apartment; and that he was not depressed.   (Id. at 950).   Although Dr. Hodo prescribed no medication, it appears from his notes that he recommended that Plaintiff consider counseling at a mental health center.   (Id. at 950).

Dr. Hodo's notes reflect that in November 2012, Plaintiff was in jail for assault but still receiving treatment from Dr. Hodo.   (Id. at 952).   Plaintiff reported that he was feeling "a little depressed" and anxious.   (Id.).   Dr. Hodo completed another MSS on that date and again opined that Plaintiff had marked and extreme limitations in every functional category and that no psychological evaluation had been obtained.   (Id. at 953-54).   Dr. Hodo indicated he was going to start Plaintiff on medication.   (Id.).

Dr. Hodo continued to treat Plaintiff from November 2012 to

March 2013, during which time it appears that Plaintiff was in and out of jail.[11] (Id. at 957-65).  Plaintiff reported that he loved going to church and that he quotes scripture.  (Id. at 958).  Dr. Hodo's notes reflect that Plaintiff was taking Buspar, that it was helping, that he was "much better," that he was not depressed, that he was looking for a job, and that he was interested in welding or becoming an electrician.  (Id. at 957-61, 965).  This is the final treatment note in the record.

As discussed above, Plaintiff argues that the ALJ erred in rejecting the opinions of his treating psychiatrist Dr. Hodo, while crediting the opinions of non-examining psychologist and medical expert, Dr. McKeown.  However, a review of the ALJ's decision reveals that the ALJ had good cause to reject the opinions of Dr. Hodo, as they were inconsistent with the substantial evidence in the case.

As the ALJ found, the record evidence detailed above confirms, that Dr. Hodo's opinions set forth in MSS forms completed on June 29, 2010 (id. at 925), May 31, 2012 (id. at 943), and November 6, 2012 (id. at 953-54), that Plaintiff has marked or extreme limitations in every functional category, are inconsistent with Dr. Hodo's own conservative, infrequent treatment of Plaintiff, as well as his own examination findings.

---

[11] Plaintiff filed his application for child insurance benefits on June 6, 2013.  (Tr. 659).

Dr. Hodo's treatment records repeatedly reflect that Plaintiff was doing "all right," was not depressed, was living on his own, was pursuing job training or looking for a job, and was helping care for his infant daughter while her mother worked. (Id. at 928-30, 945-46, 948, 950, 957-58, 961).

Moreover, in direct contrast to Dr. Hodo's repeated opinions that Plaintiff's mental impairments were debilitating, his treatment records show that he recommended no treatment whatsoever, other than sporadic office visits, not even medication. (Id. at 855, 879, 882-85, 887, 890-95, 899, 902, 904, 926-30, 944-50, 954). When Dr. Hodo did prescribe medication in 2012 and 2013 for depression and anxiety when Plaintiff was in and out of jail, his treatment notes reflect that the medication was helping, that Plaintiff was much better, and that he was not depressed. (Id. at 957, 961, 965). In addition, Dr. Hodo noted on all three MSS forms that he had not obtained a psychological evaluation when completing the forms and that Plaintiff was not on medication. (Id. at 926, 944, 954). All of this evidence is inconsistent with the severity of the limitations expressed by Dr. Hodo in the 2010 and 2012 MSS forms.

In addition to being inconsistent with his own findings, Dr. Hodo's opinions are inconsistent with the remaining substantial evidence in this case, including the findings and

opinions of consultative examiner, Dr. Richard S. Reynolds, Ph.D., who examined Plaintiff on November 17, 2008 (when Plaintiff was twenty-one) and found Plaintiff's mental status to be completely normal, his IQ to be borderline, and his ability to understand, carry out, and remember instructions and to respond appropriately to supervision, coworkers, and work pressures to be intact for his level of intellectual functioning. (Id. at 855-57). Dr. Reynolds further opined that Plaintiff would not need assistance with any benefits awarded. (Id.).

In addition, Dr. Hodo's opinions set forth in the three MSS forms are inconsistent with the opinions of medical expert Dr. Doug McKeown, Ph.D., who testified at Plaintiff's first administrative hearing that there is no basis for Dr. Hodo's opinions that Plaintiff has marked or extreme limitations in every functional category, particularly given that Dr. Hodo had treated Plaintiff for many years, yet saw no need for intervention (not even medication) to treat Plaintiff's problems. (Id. at 92). Dr. McKeown further opined that, contrary to Dr. Hodo's opinions, the medical evidence shows no more than "mild to moderate" impairments in any functional category, with the possible exception of "moderate" impairments for complex tasks, but no impairment for simple tasks. (Id. at 93).

Dr. Hodo's opinions are also inconsistent with Plaintiff's reported activities of daily living which include being able to live independently (id. at 85); take care of his own personal care needs (id. at 58, 575); take care of his infant daughter (id. at 945); prepare his own meals, do laundry, count change, use a checkbook/money orders (id. at 575-77); use a cellphone and play games on the computer (id. at 58); drive and shop (id. at 54); and socialize with family, go to church, and get along with others (id. at 578-79).  This evidence directly contradicts Dr. Hodo's opinions that Plaintiff has "marked" or "extreme" limitations in every functional category, including his ability to maintain activities of daily living.  (Id. at 926, 944, 954). Based on the foregoing, the Court finds that the ALJ had good cause to discredit the opinions of Dr. Hodo, as set forth in the three MSS forms.

Having found that Dr. Hodo's opinions are inconsistent with the substantial evidence in this case, the Court rejects Plaintiff's argument that Dr. McKeown's opinions are flawed because he did not have the benefit of reviewing Dr. Hodo's last two MSS forms, which were completed after Dr. McKeown testified in Plaintiff's first hearing.  (Doc. 16 at 9).  As discussed, all three of Dr. Hodo's MSS forms are largely redundant of one another and, in any event, are inconsistent with the substantial evidence in this case.  Therefore, it is immaterial that Dr.

McKeown did not consider Dr. Hodo's last two forms.[12]

Moreover, the Court rejects Plaintiff's argument that the ALJ failed to develop the record in this case by failing to obtain additional expert opinion evidence. (Doc. 16 at 9). Contrary to Plaintiff's argument, the ALJ is not required to obtain additional expert evidence regarding his limitations where the record contains sufficient evidence to permit the ALJ's RFC determination. See Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007)("The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision."); see also Good v. Astrue, 240 Fed. Appx. 399, 404 (11th Cir. 2007) (unpublished) ("the ALJ need not order an additional consultative examination where the record was sufficient for a decision."). Because the ALJ had ample evidence to make an informed decision regarding Plaintiff's mental limitations and because substantial evidence supports the

---

[12] Likewise, there is nothing in Dr. Hodo's treatment notes after Plaintiff's first hearing that would call into question Dr. McKeown's findings and opinions. To the contrary, as detailed herein, Dr. Hodo's treatment notes after July 28, 2010 (the date of Plaintiff's first hearing), show that Plaintiff was doing well until he began having problems with the police, and although he developed depression and anxiety while in jail, even then his condition improved with medication.

ALJ's finding that Plaintiff can perform a range of light work, with the stated non-exertional restrictions, Plaintiff's argument that the ALJ should have obtained additional evidence is unavailing.

Last, the Court rejects Plaintiff's argument that the ALJ erred in failing to evaluate his nonexertional limitations under SSR 85-15.  (Doc. 16 at 10).  Pursuant to 85-15, "[w]here a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work . . . the final consideration is whether the person can be expected to perform unskilled work."  SSR 85-15, 1985 SSR LEXIS 20, 1985 WL 56857, *4 (Jan. 1, 1985).  The ruling explains: "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions;   to   respond   appropriately   to   supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.  A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.  This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base."  Id.

First, SSR 85-15 provides guidance for evaluating claimants

with *solely* nonexertional impairments, which does not apply here since Plaintiff also had exertional impairments.  See Cason v. Colvin, 2014 U.S. Dist. LEXIS 92907, *8 (June 12, 2014), *report and recommendation adopted by* 2014 U.S. Dist. LEXIS 92490, 2014 WL 3361925, *3 (S.D. Ga. July 7, 2014).  Furthermore, even if SSR 85-15 did apply to this case, it would not require a finding of disability.  As discussed above, the ALJ restricted Plaintiff's RFC to a range of light work, with the following restrictions designed to accommodate Plaintiff's nonexertional impairments (*i.e.*, ADD/ADHD and affective disorder): Plaintiff "is limited to no more than simple, short instructions and simple work-related decisions with few work place changes.  He is limited to unskilled work.  [He] can occasionally interact with the general public, supervisors and co-workers.  He is unable to work in close proximity to others and is easily distracted.  He is limited to low stress jobs.  The job must have no requirement to read instructions, write reports or perform math calculations." (Tr. 14, 16).  With the exception of Dr. Hodo's opinions (which the Court found the ALJ had good cause to reject), there is no medical evidence to support Plaintiff's claim that his nonexertional, mental limitations preclude him from all work.  To the contrary, the substantial evidence detailed above establishes that Plaintiff's mental limitations are fully accommodated by the nonexertional

27

restrictions included in the RFC.[13]

Based on the foregoing, the Court finds that Plaintiff's claim is without merit.

## V.   Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for supplemental security income and child insurance benefits be **AFFIRMED**.

**DONE** this **30th** day of **September, 2016.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**

---

[13] The substantial evidence would include Dr. McKeown's testimony that Plaintiff has no more than "mild to moderate" impairments in any category, with possible moderate impairments for *complex* tasks, and no impairment for *simple* tasks. (Tr. 93).   In addition, it would include the findings and opinions of consultative psychologist Dr. Reynolds that Plaintiff's mental status examination was normal, that his IQ was borderline, and that his ability to understand, carry out, and remember instructions and respond appropriately to supervision, coworkers, and work pressures was intact for his level of intellectual functioning. (Id. at 855-57).